# EXHIBIT B

# ADJUSTABLE RATE NOTE
(1 Year Treasury Index - Rate Caps)

4807860

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

April 8th, 2005　　　　　　　　Uniondale　　　　　　　　New York
[Date]　　　　　　　　　　　　　[City]　　　　　　　　　　[State]

216 MILL ROAD, MANORVILLE, NEW YORK  11949-1805
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 350,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Emigrant Mortgage Company, Inc

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 11.000 %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on June 1st, 2005. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on May 1st, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 7 Westchester Plaza, Elmsford, New York 10523

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 3,333.14. This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**MULTISTATE ADJUSTABLE RATE NOTE - ARM 5-2 -** Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
Fannie Mae 4-2/5-2/6-2 ARM

VMP®-822N (0202)　　　　　　　　　　　　　　　　　　　　　　　　Form 3502 1/01

VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 4　　　　　　　　Initials: _____

4. **INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   **(A) Change Dates**
   The interest rate I will pay may change on the first day of   May 2008   , and on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."

   **(B) The Index**
   Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."
   If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

   **(C) Calculation of Changes**
   Before each Change Date, the Note Holder will calculate my new interest rate by adding  Six and one quarter  percentage points (  6.250  %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
   The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

   **(D) Limits on Interest Rate Changes**
   The interest rate I am required to pay at the first Change Date will not be greater than   13.000   % or less than   9.000   %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2.0%) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than   17.000   %.

   **(E) Effective Date of Changes**
   My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

   **(F) Notice of Changes**
   The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5. **BORROWER'S RIGHT TO PREPAY**
   I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
   I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6. **LOAN CHARGES**
   If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from

me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of   fifteen   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   2.00   % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as

# RIDER TO NOTE

This rider is made as of the __8th__ day of __April 2005_____, and is incorporated into and shall be deemed to amend and supplement the Note of the same date given by the undersigned (the "Borrower") to evidence the Borrower's Note (the "Note") to Emigrant Mortgage Company Inc., (the "Lender") of the same date.

12. The Lender's address is 7 Westchester Plaza, Elmsford, New York 10523.

13. In addition to the principal and interest payment provided for in Paragraph 3(A) of the Note, I will also include in my monthly payment escrow items as described in Paragraph 3 of the Security Instrument and will make my monthly payments to the Lender or at a different place if required by the Note Holder.

14. I agree to make an interest only payment on __April 08, 2005_____.

15. The Index reference in Paragraph 4(B) is published in the Federal Reserve Bulletin and made available each week by the Federal Reserve Board in Statistical Release H.15(519).

16. ☒ If this box is checked, I may make a full prepayment or partial prepayment before they are due at any time, however, I will be assessed a prepayment penalty as set forth in the attached rider.

17. Notwithstanding the provision of 7(A) of the Note, the amount of the charge will be __2%__ % of my total payment, which includes principal, interest and the escrow items as described in Paragraph 3 of the Security Instrument. This provision does not apply to loans secured by property in the following states: Massachusetts.

18. Section 11 of the Note is amended in its entirety to read as follows:

**11. UNIFORM SECURED NOTE**

(A) This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Seciton 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) To the extent permitted by Applicable Law, the Note Holder may charge a reasonable fee as a condition to the Note Holder's consent to a loan assumption. The Note Holder may also require the transferee to sign an assumption agreement that is acceptable to the Note Holder and that obligates the transferee to keep all the promises and agreements made in this Note and in the Security Instrument. Borrower will continue to be obligated under this Note and the Security Instrument unless the Note Holder releases Borrower in writing.

19. In the event of any assignment or transfer of the Note and Security Instrument to the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation, the provisions of Paragraph 12 through 18 herein shall upon such assignment or transfer cease to be operational and shall be null and void.

By signing this Rider, I agree to all of the above.

Tara Lesak

**LOAN ID:** 4807860

**BORROWER(S):** Tara Lesak

**PREMISES:** 216 MILL ROAD, MANORVILLE, NEW YORK  11949-1805
, ,
, ,

## EARLY PREPAYMENT/MODIFICATION RIDER

The provisions contained herewith supersede anything to the contrary stated in the Commitment, Note and Security Instrument:

I may make full or partial prepayment of the outstanding principal balance due to the Note at any time provided that I give to the Note Holder prior written notice of my irrevocable election to make such prepayment by prepaid registered or certified mail, and I pay to the Note Holder a Premium equal to two percent (2%) of the amount prepaid, if prepayment occurs on or before the first anniversary of the date of the Note.

The Premium provided above shall not be due if the Premium is otherwise prohibited by law.

In the event of a full prepayment of the outstanding balance of principal, interest and other charges under the Note, all interest accrued on the Note to the date of prepayment and all other amounts due under the Note and/or the Security Instrument as amended by this Early Prepayment/Modification Rider shall be paid on the date of such prepayment.

The above described Premium shall also be payable in the event that Note Holder requires immediate payment in full upon the occurrence of a default pursuant to the terms of the Note and/or Security Instrument on or before the first anniversary of the date of the Note, as permitted by law.

The above described Premium shall also be payable in the event that any of the terms of the Note and/or Security Instrument are modified at the request of the Borrower to reduce the interest rate or change the payment/maturity terms, with the consent of the Note Holder, on or before the first anniversary of the date of the Note.

This Rider amends the Paragraph of the Note titled "Borrower's Right to Prepay" and supersedes such Paragraph to the extent amended in this Rider during the first year of the loan term; the provisions of such Paragraph apply after the first anniversary date of the Note.

Except as amended above the terms of the Commitment, Note and Security Instrument otherwise remain in effect.

I agree to the terms and covenants contained in this Early Prepayment/Modification Rider.

_____                          _____
Borrower                                           Borrower

_____                          _____
Borrower                                           Borrower

Rev S/C4        PPY2F

this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Tara Lesak            -Borrower

_____ (Seal)
                      -Borrower

_____ (Seal)
                      -Borrower

_____ (Seal)
                      -Borrower

_____ (Seal)
                      -Borrower

_____ (Seal)
                      -Borrower

_____ (Seal)
                      -Borrower

_____ (Seal)
                      -Borrower

*[Sign Original Only]*

STATE OF NEW YORK )
                  )ss.:
COUNTY OF NASSAU  )

On the 8th day of April in the year 2005, before me, the undersigned, personally appeared Tara Lesak, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies) and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

L:\EMIGRANT\FORMS\ACKMGMNT\GENERAL

*[signature]*
Notary Public

ALLISON J. SCHOTT
Notary Public, State Of New York
No.01SC6087635
Qualified In Queens County
Commission Expires Feb. 18, 2007.