EXHIBIT C

Return To:
Emigrant Mortgage Company, Inc

7 Westchester Plaza
Elmsford, New York   10523
914-785-1100

Prepared By:
Mary Hebron
7 Westchester Plaza
Elmsford, New York   10523
914-785-1100

AA-60125-05-S.

———————[Space Above This Line For Recording Data]———————

Dist 0200
Sect 355.00
Block 04.00
Lot: 003.000
Suffolk County

4807860

# MORTGAGE

**WORDS USED OFTEN IN THIS DOCUMENT**
(A) "Security Instrument." This document, which is dated   April 8th, 2005
together with all Riders to this document, will be called the "Security Instrument."
(B) "Borrower."   Tara Lesak

whose address is  216 Mill Road, Manorville, New York 11949

sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "Lender."   Emigrant Mortgage Company, Inc

will be called "Lender." Lender is a corporation or association which exists under the laws of
The State of New York            . Lender's address is 7 Westchester Plaza,
Elmsford, New York   10523

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT           Form 3033 1/ 01

⓺-6(NY) (0005).01
Page 1 of 17           Initials: T.L.
VMP MORTGAGE FORMS - (800)521-7291

(D) "Note." The note signed by Borrower and dated    April 8th, 2005    , will be called the "Note." The Note shows that I owe Lender Three Hundred Fifty Thousand and no/100.

Dollars (U.S. $ 350,000.00    ) plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by    May 1st, 2035

(E) "Property." The property that is described below in the section titled "Description of the Property," will be called the "Property."

(F) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(H) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider   [ ] Condominium Rider            [ ] Second Home Rider
[ ] Balloon Rider           [ ] Planned Unit Development Rider [ ] 1-4 Family Rider
[ ] VA Rider                [ ] Biweekly Payment Rider        [X] Other(s) [specify]
Rider to Mtg                  *Early Prepmt Rider

(I) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(J) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(K) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."

(M) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(N) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(P) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

**DESCRIPTION OF THE PROPERTY**

I give Lender rights in the Property described in (A) through (G) below:
(A) The Property which is located at

216 MILL ROAD [Street]
MANORVILLE [City, Town or Village], New York 11949-1805 [Zip Code].
This Property is in SUFFOLK County. It has the following legal description:

See Schedule "A" attached hereto and made a part hereof. These premises are improved by a 1-2 family dwelling only.

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

VMP-6(NY) (0005).01         Page 3 of 17         Initials: TL         Form 3033 1/01

Schedule A Description

Title Number AA-60125-05-S                                                                 Page   1

ALL that certain plot, piece or parcel of land, situate, lying and being at Manorville, Town of Brookhaven, County of Suffolk and State of New York being bounded and described as follows:

BEGINNING at a point on the Southerly side of Shakum Swamp Road (a/k/a Mill Road, a/k/a Jones Road), said point being distant 613.70 feet Westerly from the Westerly end of a curve connecting the Westerly side of Doe Run with the Southerly side of Shakum Swamp Road, said point of beginning also being the division line between lands hereinafter described and lands on the map of Deer Ponds;

RUNNING THENCE from said point of beginning along above mentioned division line South 5 degrees 14 minutes 30 seconds West, 460.64 feet to a monument and lands now or formerly of Miller;

THENCE along said lands the following three (3) courses and distances:
1. North 85 degrees 58 minutes 30 seconds West, 142.77 feet;
2. North 86 degrees 47 minutes 40 seconds West, 254.78 feet;
3. North 85 degrees 56 minutes 30 seconds West, 51.84 feet to a monument set in the Southeasterly side of Shakum Swamp Road;

THENCE along said Southeasterly and Southerly side of Shakum Swamp Road the following two (2) courses and distances:
1. North 41 degrees 25 minutes 50 seconds East, 482.57 feet;
2. North 68 degrees 04 minutes 00 seconds East, 184.64 feet to the point or place of BEGINNING.

Said premises being known as 216 Mill Road, Manorville, NY

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

**COVENANTS**

I promise and I agree with Lender as follows:

**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**
**(a) Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"
(2) The leasehold payments or ground rents on the Property (if any);
(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;
(4) The premium for Mortgage Insurance (if any);
(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and
(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b) Lender's Obligations.**

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

**(c) Adjustments to the Escrow Funds.**

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments and Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security

Initials: ___

VMP-6(NY) (0005).01                           Page 6 of 17                           Form 3033 1/01

Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c)

Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7. **Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

(a) **Maintenance and Protection of the Property.**

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b) **Lender's Inspection of Property.**

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance

coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. **Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in