USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/23/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :         07 Cr. 0396 (GEL)
                                                            :
        -v.-                                                :
                                                            :         **OPINION AND ORDER**
ERIC LESAK,                                                 :
                                                            :
                        Defendant.                          :
                                                            :
------------------------------------------------------------x

Melanie F. Finkel, Knuckles Komosinski & Elliot,
LLP, Tarrytown, NY, for third party claimant
Emigrant Mortgage Company, Inc.

Richard L. Hutchinson, Hutchinson &
Hutchinson, P.C., Oyster Bay, NY, for third party
claimant Robert S. McCoy.

GERARD E. LYNCH, District Judge:

    Third party petitioner Emigrant Mortgage Company, Inc. ("EMC") moves to dismiss

third party petitioner Robert McCoy's Petition for Determination of Third Party Interest in Real

Property Subject to Forfeiture on the grounds that it fails to state a claim under 21 U.S.C. §

853(n)(6)(A) and (B). EMC also seeks an order directing the sale of the subject property, with

the proceeds used to pay all the amounts due to EMC pursuant to the Note and Mortgage held by

EMC. EMC's motion will be denied.

## BACKGROUND

**I.    Lesak's Fraud**

    Between September of 2003 and February of 2004, Eric Lesak fraudulently procured

$1,443,398.80 from McCoy. (Declaration of Melanie F. Finkel, dated March 12, 2009 ("Finkel

3/12/09 Decl."), Ex. A.) Lesak, holding himself out to be a securities dealer, induced McCoy to

wire-transfer money to a bank account in his name on the representation that he would use that money to purchase stock in certain companies on McCoy's behalf. (Declaration of Melanie F. Finkel, dated February 12, 2009 ("Finkel 2/12/09 Decl."), Ex. D at 1-2.) Lesak had in fact been "disbarred" by the National Association of Securities Dealers in 2001, and the information he provided to McCoy about the finances of the companies was false and misleading. (Id.) Moreover, Lesak did not actually purchase stocks on McCoy's behalf; instead, he used the money McCoy had invested with him for his own personal benefit. (Id.)

## II.  The Property and the Mortgage

On February 11, 2004, Lesak purchased property located at 216 Mill Road, Manorville, Suffolk County, New York (the "Property"). (Mem. 1.) The Property was purchased for $620,000 and was titled in the name of Tara Lesak, Eric Lesak's wife. (Declaration of Richard L. Hutchinson, dated March 4, 2009 ("Hutchinson Decl."), Ex. B.) The purchase price was funded in part via a purchase money mortgage in the amount of $265,000 from Berkshire Mortgage Group, Inc., which immediately assigned the mortgage to New Century Home Mortgage Corporation. (Id., Ex. C.) The balance of the purchase price was paid by wire transfer from the account into which McCoy had wired his money. (Finkel 2/12/09 Decl., Ex. C ¶ 3.)

On September 2, 2004, after Tara Lesak defaulted on her mortgage payments, New Century commenced a foreclosure proceeding. (Hutchinson Decl., Ex. D.) On April 8, 2005, EMC refinanced the New Century loan, taking the property out of foreclosure. Tara Lesak executed and delivered to EMC a Note in the principal sum of $350,000 (the "Mortgage") with installments of principal and interest to be paid thereon. (Mem. 2.) The Mortgage is secured by and is a first mortgage lien on the Property and was recorded with the Suffolk County Clerk on April 28, 2005. (Finkel 2/12/09 Decl., Ex. B ¶¶ 5, 6.)

Tara Lesak defaulted on her obligations under the Mortgage on June 1, 2005. Notice of default was served on Tara Lesak on September 19, 2005, and EMC commenced a mortgage foreclosure action on October 25, 2005 in New York Supreme Court. (Id. ¶¶ 7, 8.) EMC contends that the amount due it as of February 10, 2009 was $513,924.09: the base fee plus interest, late charges, tax and insurance advances, legal fees, and other expenses. (Id., Ex. F ¶ 4.)

### III. The Forfeiture Proceeding

On May 25, 2006, an Indictment was filed in the Middle District of Florida charging Lesak with violations under 18 U.S.C. §§ 1343 and 2. The Florida Indictment contained a forfeiture allegation ordering Lesak to forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) "all of his interest in any property constituting or derived from proceeds obtained directly or indirectly as a result of [the charged] violations, including but not limited to . . . [the Property]." (Id., Ex. D at 4.) On August 5, 2005, a Notice of Lis Pendens was recorded by the United States in the Suffolk County Clerk's Office and EMC's foreclosure action was placed on hold.

The criminal case was transferred from the Middle District of Florida to the Southern District of New York and, on May 8, 2007, Lesak pled guilty to the Florida Indictment and admitted to the forfeiture allegations therein. (Id., Ex. A.)

According to Sharon Cohen Levin, an Assistant United States Attorney ("AUSA") for the Southern District of New York ("SDNY"), "[w]hen the case arrived at [the SDNY], there had already been an agreement between the U.S. Attorney's Office in Tampa in the Middle District of Florida and Mr. McCoy's counsel that Mr. McCoy would either get the proceeds of the sale from the property or the property itself and he could file a claim in our forfeiture

3

proceeding." (Tr. 5.)[1] The record includes a letter dated November 25, 2006 in which McCoy's former counsel informed EMC that,

> [c]ontemporaneous with this forfeiture [of the Property to the United States Government], the Government intends to transfer title to Mr. McCoy as partial restitution in this matter. Should [EMC] desire to confirm the sum and substance of these representations, kindly contact FBI Special Agent Bob Cessario . . . . Given the rather egregious criminal conduct of Mr. Lesak as well as the manner in which Mr. McCoy has been victimized in this matter, we respectfully submit Emigrant Savings Bank should waive any and all default interest which has accrued during Lesak's period of non-payment as well as any other monetary penalties (i.e. legal fees, etc.) assessed against the property over and above the principal balance of the loan at the time of the Indictment.

(Finkel 3/12/09 Decl., Ex. A.)

While the record does not include any correspondence between the U.S. Attorney's Office in the Middle District of Florida ("MDFL") and McCoy, AUSA Levin's understanding was that the MDFL

> assumed, without I think elaborating fully, that Mr. McCoy would take subject to the bank's mortgage because that's what the Government would do. . . . I don't believe that [the Middle District of Florida] ever promised him [the Property unencumbered by a mortgage]. . . . [U]nless the Government can show that there was something improper about the mortgage, . . . the Government is required under the law to pay the mortgage.[2]

(Tr. 11.)

---

[1] "Tr." refers to the transcript of a conference held before this Court on December 12, 2008.

[2] According to AUSA Levin, in forfeiture actions, the SDNY traditionally pays a "regular contract rate" on a mortgage – not the default rate. (Tr. 6-7.)

4

On McCoy's understanding that he would receive the Property or proceeds from the sale thereof, and on discovering that the Property was vacant and being vandalized, McCoy advised the MDFL that he was going to safeguard the Property and make necessary repairs. (Hutchinson Decl., Ex. A ¶ 8.) According to McCoy, the Government "told [him] to go ahead." (Id.) McCoy proceeded to spend approximately $65,000 to repair the house and keep it in proper condition during the pendency of the forfeiture action. (Id. ¶ 9.)

On October 4, 2007, the SDNY published notice of its intent to dispose of the Property. (Finkel 2/12/09 Decl., Ex. E.) On October 16, 2007, EMC filed its Petition for Determination of Third Party Interest in Real Estate subject to Forfeiture pursuant to 21 U.S.C. § 853(n) and Fed. R. Crim. P. 32.2(c) on the grounds that, as holder of a first mortgage on the Property, it had a legal right to the Property which rendered the Forfeiture Order invalid. (Id., Ex. B.)

On October 28, 2007, McCoy filed his Petition. (Id., Ex. C.) McCoy's Petition noted that he was a victim of Lesak's crime, that the Property was purchased in part using funds stolen from McCoy, and that an equitable lien should thus be imposed in McCoy's favor. (Id. ¶¶ 3-6.)

The Government's position is that both McCoy and EMC have interests in the Property; its role in this action is essentially that of an interpleader. (Tr. 10.)

### DISCUSSION

**I.     Standard of Review**

Rule 32.2(c)(1)(A) of the Federal Rules of Criminal Procedure provides that: "In [an] ancillary proceeding, the court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason. For purposes of the motion, the facts set forth in the petition are assumed to be true." Under Rule 32.2, a motion to dismiss a third party petition in a forfeiture proceeding which is filed prior to discovery or a hearing is treated like a

motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b)(6).  Pacheco v. Serendensky, 393 F.3d 348, 352 (2d Cir. 2004).  Accordingly, this Court will dismiss McCoy's Petition only if it has not alleged "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

**II.     The Forfeiture Statute**

The procedure for asserting a third-party claim with respect to property subject to a criminal order of forfeiture in an ancillary proceeding is set forth in 21 U.S.C. §§ 853(n)(1) and (2).  The substantive portion of 21 U.S.C. § 853(n)(6) provides:

> If, after [a] hearing, the court determines that the petitioner has established by a preponderance of the evidence that-
>
> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>
> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;
>
> the court shall amend the order of forfeiture in accordance with its determination.

**III.    McCoy's Status under Section 853(n)**

EMC contends that, as a victim of Lesak's crime, McCoy is merely a general creditor of Lesak's with no legal interest in the Property and no standing to contest the forfeiture order.  (Mem. 2.)  EMC is correct that, if McCoy is indeed a general creditor, then he lacks standing under § 853(n)(6)(A).  The Second Circuit has ruled that

> the categories of *vested* and *superior* are intended to cover those cases where the Court lacks jurisdiction over the property because it is not really "property of the defendant." A general creditor has no interest in a particular asset or particular funds that is either vested or superior to a defendant's. He may have a right to receive payment, but he does not have a property interest superior to defendant's in any particular asset or funds . . . .

United States v. Schwimmer, 968 F.2d 1570, 1582 (2d Cir. 1992) (emphasis in original).[3] In DSI Associates LLC v. United States, the Second Circuit elaborated that general creditors do not "possess a 'legal right, title, or interest in the [forfeited] property' . . . as required for standing under section 853(n)(6)(A)" because they do not possess an interest "'in' a 'particular, specific asset' that is, or is part of, the forfeited property." 496 F.3d 175, 184 (2d Cir. 2007). Crime victims are typically general creditors. As the Eleventh Circuit has stated, "a fraud victim who voluntarily transfers property to the defendant has a cause of action in tort against the defendant but has no greater interest in the forfeited property than does any other general creditor." United States v. Eldick, 223 Fed. Appx. 837, 840 (11th Cir. 2007) (internal quotations omitted).

DSI Associates supports the proposition that a general creditor has no standing to contest a forfeiture. Contrary to EMC's contention, however, it does not support the proposition that McCoy is necessarily a general creditor. (See Mem. 9-10; Reply 2.) The circumstances in DSI Associates – in which neither side disputed that the petitioner was a general creditor – are sharply distinguishable from those at hand. In that case, the Government sought forfeiture of shares of stock which were purchased with proceeds from the defendant's wire fraud. The entity from which the defendant acquired the shares sought to contest the forfeiture of a portion of the

---

[3] In Schwimmer, the operative forfeiture statute was 18 U.S.C. § 1963(1)(6) but the language of § 1963(1)(6) is identical to that of 21 U.S.C. § 853(n)(6) and courts routinely apply reasoning found in § 1963(1)(6) cases to those in § 853(n)(6) cases and vice versa. See United States v. BCCI Holdings (Luxembourg), S.A., 833 F. Supp. 29, 31 n.5 (D.D.C. 1993).

7

proceeds, arguing that the acquisition of a portion of the underlying shares was attributable not to tainted funds but to an unrelated and untainted promissory note executed by the defendant. See United States v. Gordon, 03 Civ. 1494, 2005 WL 2759845, at *1 (S.D.N.Y. Oct. 19, 2005). The court found that the petitioner had received all it was due "and therefore retained no legally cognizable interest in any portion of the . . . shares, or the proceeds thereof, because it was, as it readily admitted, a general creditor with no specific claim on any of the forfeited property." DSI Associates, 496 F.3d at 181.

EMC's characterization of McCoy as a general creditor with no legal interest in the Property is not necessarily accurate. While McCoy does not qualify as a "bona fide purchaser" or the possessor of a "vested" right in the Property, a victim whose stolen funds are traceable directly to the forfeited property may have a "superior" right under § 853(n). To demonstrate a cognizable right to contest the forfeiture, McCoy must establish (1) that he has a legal interest in the Property and (2) that this interest was superior to Lesak's at the time of the fraud. 21 U.S.C. § 853(n)(6)(A). McCoy plausibly asserts that he has such an interest, not simply as a general creditor victim of a theft of money, but as the beneficiary of a constructive trust on the Property itself.

State law determines McCoy's interest in the Property. Pacheco, 393 F.3d at 353. Under New York law, a constructive trust may be imposed where four factors are present: (1) a promise, express or implied; (2) a transfer in reliance on the promise; (3) a fiduciary or confidential relationship; and (4) unjust enrichment. Simonds v. Simonds, 45 N.Y.2d 233, 242 (1978). Although these factors provide "important guideposts, the constructive trust doctrine is equitable in nature and should not be rigidly limited." Counihan v. Allstate Ins. Co., 194 F.3d 357, 362 (2d Cir. 1999) (quotation omitted). In addition, in a forfeiture context, "[i]t is hornbook

law that before a constructive trust may be imposed, a claimant to a wrongdoer's property must trace his own property into a product in the hands of the wrongdoer." United States v. Benitez, 779 F.2d 135, 140 (2d Cir. 1985); see also U.S. S.E.C. v. Universal Exp., Inc., No. 04 Civ. 2322, 2008 WL 1944803, at *3 (S.D.N.Y. Apr. 30, 2008).

In the instant case, McCoy alleges all of these elements: that there was a promise by Lesak to use McCoy's money to purchase securities on his behalf; that McCoy transferred his money to a designated bank account in reliance on the promise; that, as McCoy's purported securities broker, Lesak was in a fiduciary or confidential relationship with McCoy;[4] and that unjust enrichment would result if Lesak were permitted to retain the Property.[5] Additionally, taking the allegations in McCoy's Petition as true, McCoy is able to trace his own property to the Property which Lesak purchased. Thus, McCoy has alleged facts sufficient, if true, to permit a reasonable fact finder to conclude that he has established an entitlement to a constructive trust on

---

[4] "[R]ules concerning confidential or fiduciary relationships embrace both technical fiduciary relations and those informal relations which exist when one person trusts in and relies on another." 60A N.Y. Jur. 2d Fraud and Deceit § 17. Although "[i]n the absence of discretionary trading authority delegated by the customer to the broker . . . a broker does not owe a general fiduciary duty to his client," Schenck v. Bear, Stearns & Co., 484 F. Supp. 937, 946-47 (S.D.N.Y.1979), overruled on other grounds by Conway v. Icahn & Co., 16 F.3d 504 (2d Cir. 1994), "strict adherence to the confidential or fiduciary relationship element of a constructive trust is not necessary when a party holds property under circumstances that in equity and good conscience he ought not retain." Sec. Pacific Mortg. & Real Estate Services, Inc. v. Republic of Philippines, 962 F.2d 204, 210 (2d Cir. 1992); see also Koreag v. Refco F/X Assoc., Inc., 961 F.2d 341, 353 (2d Cir. 1992) (lack of fiduciary relationship does not automatically defeat claim of constructive trust).

[5] EMC argues that McCoy is not entitled to a constructive trust because EMC never had a relationship of any kind with McCoy. But the relevant parties to the constructive trust here are McCoy and Lesak, not McCoy and EMC.

9

the Property.[6]

As to whether a constructive trust can constitute a "legal right" for purposes of § 853(n)(6)(A), the Second Circuit has determined that, despite the fact that a constructive trust is an equitable remedy, it nonetheless qualifies as a "legal right" in property under § 853(n)(6)(A) and warrants an amendment of an order of forfeiture if the property ordered forfeited is traceable to property held in constructive trust. Schwimmer, 968 F.2d at 1574.

Whether McCoy's interest in the Property was superior to Lesak's at the time of Lesak's fraud – and thus renders the forfeiture order invalid under § 853(n)(6) – is a matter of federal law. United States v. Fleet, 498 F.3d 1225, 1231 (11th Cir. 2007). Various courts have found that a constructive trust constitutes a "superior" interest and confers standing in a forfeiture proceeding. See United States v. Peoples Benefit Life Ins. Co., 271 F.3d 411, 416 (2d Cir. 2001); United States. v. Campos, 859 F.2d 1233, 1238-39 (6th Cir. 1988). McCoy thus has alleged a superior interest in the Property, and his Petition cannot be dismissed for lack of standing.

---

[6] At a December 12, 2008, conference, McCoy's counsel claimed that the fact that McCoy's expenditure on "protecting and safeguarding the Property" gave rise to an equitable lien of sorts. (Tr. 19.) Under New York law, an equitable lien is a right to charge specific property or its proceeds with the payment of a particular debt. Reisner v. Stoller, 51 F. Supp. 2d 430, 453 (S.D.N.Y.1999). "With respect to real property, an equitable lien is created by implication when a party standing in a confidential relationship with the legal owner of the property makes payments from his or her own funds toward the purchase price, reduction of the mortgage *or improvements to the real property* under circumstances which would entitle that party to restitution." Id., citing Scivoletti v. Marsala, 61 N.Y.2d 806, 808-09 (1984) and Goldrick v. Goldrick, 417 N.Y.S.2d 410, 415 (Sup.Ct.1979) (emphasis added). Courts impose equitable liens "as a measure of restitution to prevent the owner of the property from being unjustly enriched by his abuse of the confidential relationship." Id. It is not necessary to reach this ground because McCoy's constructive trust argument is sufficient to survive a motion to dismiss.

10

## CONCLUSION

For the foregoing reasons, EMC's motion to dismiss McCoy's Petition and Order the sale of the Property is denied.

SO ORDERED.

Dated: New York, New York
      June 23, 2009

                                            GERARD E. LYNCH
                                            United States District Judge